# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA KAY BALDWIN, | Case No. 1:16-cv-01136-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.  INTRODUCTION

On August 3, 2016, Plaintiff Jessica Kay Baldwin ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Supplemental Security Income ("SSI") benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

On March 28, 2012, Plaintiff filed a claim for SSI benefits, alleging she became disabled on March 27, 2012, due to mild mental retardation. (Administrative Record ("AR") 187, 191.) Plaintiff was born on July 14, 1982, and she was 29 years old on the alleged disability onset date. (AR 24.) Plaintiff has at least a high school education. (AR 24.)

**A.     Relevant Medical Evidence**

  **1.     Initial Psychological Evaluation by Dr. Yoseph Geshuri**

On January 18, 2010, Plaintiff presented at the Center for Health and Behavior requesting mental health services and support. (AR 309.) Plaintiff was evaluated by Yoseph Geshuri, Ph.D. (AR 309-10.) Dr. Geshuri assessed Plaintiff's general intellectual level to be "within the 'average' (i.e., IQ score of 90-109 points) to 'low average' (i.e., score of 80-89 points) range. (AR 310.) Plaintiff's perceptual organization, working memory, and processing speed were within the borderline level, as "further corroborated by her academic achievement expectation levels . . . performing the fifth grade levels with respect to her reading and spelling, although exhibiting high school level of skill with her mathematics ability." (AR 310.) Dr. Geshuri attributed Plaintiff's academic skills and ability to answer his questions to the support she received during her schooling, and found that Plaintiff's adaptive behaviors and ability to function independently were within the severely disabled range. (AR 311.) Dr. Geshuri concluded that "while Jessica appears to provide high scores on 'paper and pencil intelligence tests,' she would not be able to function in her daily living arrangement and the performance of many of her normal activities of daily living tasks independently. (AR 311.)

  **2.     Mental Health Services Assessment by Social Worker**

Plaintiff was evaluated by a social worker at the Central Valley Regional Center of Visalia on March 25, 2010. (AR 314.) Plaintiff was "most socially engaging and demonstrated appropriate speech and language skills." (AR 314.) Plaintiff reported no depression or sadness, and she was non-aggressive. (AR 315.) The social worker noted that Plaintiff "appears to have

---
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

little understanding of social cues . . . . appears to have average intelligence with severely low adaptives," and that Plaintiff "requires policing by others." (AR 316-17.)

### 3. Neuropsychological Evaluation by Dr. Howard J. Glidden

On April 6, 2010, Plaintiff underwent a neuropsychological evaluation with a licensed psychologist, Howard J. Glidden, Ph.D, at the request of the Central Valley Regional Center Visalia. (AR 318; *see also* AR 317.) Dr. Glidden observed that Plaintiff appeared neatly dressed, well-kempt, and her hygiene was unremarkable. (AR 323.) She was alert, fully oriented, and socially responsive. (AR 323.) Plaintiff displayed sufficient attention and ability to focus concentration to complete the evaluation without challenge. (AR 323.) Plaintiff's task-persistence and tolerance for frustration was within normal limits, and she evidenced no inattention, distractibility impulsivity, or impersistence. (AR 323.) Plaintiff presented as amiable, friendly, and her interpersonal interaction was appropriate. (AR 323.) Dr. Glidden noted that Plaintiff's cognitive tempo appeared to be slow, but that she presented normal thought process and content, intact error recognition and utilization, and she demonstrated "no evidence of perseverative interference or difficulty in shifting from one task to another." (AR 323.)

Dr. Glidden diagnosed Plaintiff with "Cognitive Disorder, Not Otherwise Specified (294.9),[3] as evidenced from slow rate of information processing, which has been well-documented from [Plaintiff]." (AR 329.) Dr. Glidden noted that Plaintiff's speed of processing a task should improve with repetition of the particular task. (AR 329.)

### 4. Psychological Evaluation – MSLA-Visalia

On July 16, 2012, Plaintiff presented at MSLA-Visalia for a psychological evaluation. (AR 343.) J. Zhang, Psy.D, observed that Plaintiff was alert, oriented, and her affect was intact. (AR 345.) Plaintiff's thought process during the testing was coherent and organized, and her attention and concentration were fair. (AR 345.) Dr. Zhang assessed Plaintiff's intellectual

---

[3] The Diagnostic and Statistical Manual of Mental Disorders ("DSM") designates this category "for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section and that are not better classified as Delirium Not Otherwise Specified, Dementia Not Otherwise Specified, or Amnestic Disorder Not Otherwise Specified." Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders 179-80 (4th ed. Text rev. 2000).

3

functioning and fund of general information as moderately limited. (AR 345.) He assessed Plaintiff's insight and judgment to be below average. (AR 345.) Plaintiff scored a full scale IQ of 79 points (AR 19, 346) and a Global Assessment Functioning ("GAF") of 56 points (AR 22, 347).

Dr. Zhang concluded that Plaintiff had no limitations in her ability to understand, remember, and carry out simple one- or two-step instructions, and moderate limitations in all other areas of mental functioning except in her ability to manage money on her own behalf. (AR 21, 348.) Dr. Zhang ultimately diagnosed Plaintiff as borderline to low average intellectual functioning. (AR 348.)

### 5. State Agency Physicians

On July 27, 2012, A. Garcia, M.D., a state agency physician, assessed Plaintiff's mental residual functional capacity ("RFC")[4] and found that Plaintiff had understanding and memory limitations, specifically a moderately limited ability to understand and remember detailed instructions. (AR 75.) Plaintiff also was moderately limited in her ability to interact appropriately with the general public. Plaintiff was not significantly limited, however, in her ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule and maintain regular attendance; (5) sustain an ordinary routine without special supervision; and (6) relate to supervisors and coworker. (AR 75-77.) In an eight-hour workday, Plaintiff could maintain attention and concentration for two-hour increments. (AR 76.) Dr. Garcia recommended limited public contact. (AR 77.)

On March 9, 2013, another state agency physician, Elizabeth Covey, Psy.D., agreed with Dr. Garcia's findings, but noted the following additional findings: Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. (AR 95-97.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for SSI benefits initially on August 21, 2012, and again on reconsideration on March 12, 2013. (AR 106-110, 116-120.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 121-25.) At the hearing on June 12, 2014, Plaintiff appeared without counsel and testified before an ALJ as to her alleged disabling conditions. (AR 15, 36-45.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a small products assembler 1, Dictionary of Operational Titles ("DOT") code 920.587-018, which was medium and unskilled work, with a specific vocational preparation ("SVP") of 2. (AR 47-48.) Plaintiff also had past work as a hand packager, code 706.684-022, which was light and unskilled work, with a specific vocational preparation ("SVP") of 2. (AR 47.)

The ALJ posed a hypothetical question to the VE, asking whether—considering a person of Plaintiff's age, education, and with her past work experience—there is any past work this person can perform. (AR 48-49.) The VE was also to assume that within an eight-hour workday, this person has no exertional limits, is limited to one- or two-step instructions consistent with an SVP of 2, and is limited to simple, routine, and repetitive tasks with no production rate or pace work. (AR 48.) The VE testified that such a person could not perform Plaintiff's past relevant work as it is generally performed in the commercial economy, but that such a person could perform it as Plaintiff actually performed it. The VE testified that such an individual could perform other unskilled work as a commercial or institutional cleaner, which is heavy exertional work, SVP of 2, DOT code 381.687-014; termite exterminator helper, which is heavy exertional work, SVP of 2, DOT code 383.687-010; housekeeping cleaner, which is light exertional work, SVP of 2, DOT code 323.687-014. (AR 49-50.)

The ALJ then proposed a second hypothetical question to the VE, asking whether—considering the same individual in the second hypothetical but with the additional limitations that the individual can have only occasional interaction with the general public and can perform work only with close supervision—there is any past work this individual can perform. (AR 51-52.) The VE testified that there would be no work such a person could perform as it is generally

performed in the commercial economy, but that such an individual could perform it as Plaintiff actually performed it. (AR 54–55.) The VE testified that such an individual could perform the three jobs listed in answer to the first hypothetical question. (AR 52.)

The ALJ proposed a third hypothetical question to the VE about past work, considering the same individual with the same limitations posed in the second hypothetical but with the added limitation that the individual can work with few, if any, changes in the workplace. (AR 52.) The VE testified that there would be no work such a person could perform as it is generally performed in the commercial economy, but that such an individual could perform it as Plaintiff actually performed it. (AR 53.) The VE testified that such an individual could perform the three jobs listed in answer to the first and second hypothetical questions.

After the ALJ questioned Plaintiff's mother, Deborah Baldwin, the ALJ posed another hypothetical to the VE. (AR 55-57.) The ALJ asked the VE to consider the same individual with the same limitations posed in the third hypothetical but with the added limitations that the individual needs "close supervision defined as having a supervisor checking the person's work on an hourly basis," and the "person must avoid exposure to workplace hazards such as fast-moving machinery, working at unprotected heights." (AR 58.) The VE testified, "[T]hat's more along the lines of sheltered work so I don't believe there's any competitive work." (AR 59.) The ALJ then asked the VE whether supervision of once every two hours—approximately four times per day—would change his answer, and the VE testified, "I think that would be acceptable for competitive work." (AR 59.)

**C.  The ALJ's Decision**

In a decision dated September 17, 2014, the ALJ found that Plaintiff was not disabled. (AR 12–29.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 17–25.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since March 28, 2012, the application date. (AR 17.) The ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning. (AR 17.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 18-20.)

The ALJ determined that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but is limited to performing work that requires only one or two-step instructions consistent with specific vocational preparation (SVP) level two work, as defined by the *Dictionary of Occupational Titles*. She is also limited to performing only simple, routine, and repetitive tasks with no production rate or pace work. The claimant is further limited to having only occasional interaction with the general public and can only perform work where she needs close supervision, which is defined as having a supervisor checking on her work once a day.

(AR 20.)

The ALJ determined that, given her RFC, Plaintiff was unable to perform any past relevant work, but that Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies, specifically commercial or institutional cleaner, termite exterminator helper, and housekeeping cleaner. (AR 24-25.) In reaching her conclusions, the ALJ further determined that Plaintiff's subjective complaints were only partially credible. (AR 24.) The ALJ also determined that Plaintiff's mother, Deborah M. Baldwin, who testified on Plaintiff's behalf, was "less than fully credible because Ms. Baldwin appears to exaggerate [Plaintiff's] symptoms." (AR 22.) Particularly, the ALJ found her testimony regarding Plaintiff's need for hourly supervision to be contradicted by the other evidence. (AR 22.) Lastly, the ALJ afforded limited weight to the witness testimony of Plaintiff's then-newly assigned social worker, Mary Starbritto. (AR 22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 2, 2016. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.  Plaintiff's Appeal**

On August 3, 2016, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ erred in finding that Plaintiff could perform the other work the ALJ identified at step five, despite Plaintiff's need for close supervision, and that the ALJ erred in affording only limited weight to the testimony of Plaintiff's social worker, Mary Starbritto. (*See generally* Doc. 13.)

7

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3),

1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

In her Opening Brief (Doc. 13), Plaintiff contends that the ALJ erred in finding that Plaintiff could perform the other work the ALJ identified at Step Five, despite Plaintiff's need for close supervision. (*See* Doc. 13 at 5.) Plaintiff also argues that the ALJ erred by affording only limited weight to the testimony of Plaintiff's social worker, Mary Starbritto. (*See* Doc. 13 at 11.) Defendant counters that Plaintiff's supervision limitations do not prevent Plaintiff from performing the other work identified at Step Five, and that the ALJ reasonably afforded limited weight to the testimony of Ms. Starbritto. (*See* Doc. 14 at 8-12.)

**A.   The ALJ Did Not Err in Finding Plaintiff Could Perform Other Work.**

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform other substantial gainful activity in the national economy because the requirements for the jobs cited by the VE

conflict with Plaintiff's limitations. (*See* Doc. 13 at 5-10.) The Court disagrees with Plaintiff's position.

At Step Five in the sequential analysis, "the ALJ . . . examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines . . . ." *Id.* "If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to . . . benefits." *Id.* (citation omitted). "If the Commissioner cannot meet this burden, then the claimant is disabled and therefore entitled to . . . benefits." *Id.* (citation omitted).

In this case, the ALJ used the first method at Step Five—the testimony of a VE. (*See, e.g.*, AR 24-25.) ALJs use VEs at disability hearings by calling the VE "to testify," then presenting the VE with "a series of hypothetical questions to 'set out all of the claimant's impairments' for the [VE's] consideration." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). "The [VE] is then called upon to translate [these] factual scenarios [into] realistic job market probabilities by testifying . . . to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Id.* (citation omitted).

At the hearing, the VE testified that Plaintiff could perform the jobs of "commercial or institutional cleaner," "termite exterminator helper," and "housekeeping cleaner." (AR 49-50.) All of these jobs are unskilled and require level 1 reasoning. *See Cleaner, Commercial or Institutional*, Dictionary of Occupational Titles, 1991 WL 673257 (4th ed. 1991); *Exterminator Helper, Termite*, Dictionary of Occupational Titles, 1991 WL 673270 (4th ed. 1991); *Cleaner,*

*Housekeeping*, Dictionary of Occupational Titles, 1991 WL 672783 (4th ed. 1991). Unskilled work requires little or no judgment. 20 C.F.R. §§ 401.1568(a), 416.968(a). Level 1 reasoning requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variable in or from these situations encountered on the job. DOT, Appx. C, III. Plaintiff argues that the ability to perform unskilled work, as required by the three jobs the ALJ identified, conflicts with Plaintiff's need for close supervision. (*See* Doc. 13 at 6.) Plaintiff's argument lacks merit.

Plaintiff's contention that a supervisor would be "required to check on [Plaintiff] in the course of these tasks" mischaracterizes the degree to which the ALJ found Plaintiff would need supervision. (Doc. 13 at 9.) The ALJ found that Plaintiff would need to "hav[e] a supervisor check[] on her work once a day." (AR 20.) The ALJ found the testimony of Plaintiff's mother that Plaintiff needed hourly supervision to be less than credible because it was contradicted by the reports from the state agency physicians, Dr. Glidden, and Dr. Zhang—a finding not challenged by Plaintiff.[5] (AR 22.); *see also Bettis v. Colvin,* 649 Fed. Appx. 390 (9th Cir. 2016) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)) (finding that contradictory medical evidence is a germane reason for rejecting lay witness testimony); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999), *amended by Tidwell v. Apfell*, No. 97-35863, 1999 WL 27525 (9th Cir. Jan. 26, 1999) (explaining contradictory medical evidence and testimony about claimant's activities are clear and convincing reasons for rejecting testimony of law witness). The ALJ also found that the testimony of Plaintiff's mother was contradicted by a letter from Mary Hodges, Plaintiff's supervisor at the sheltered workshop, in which Ms. Hodges writes that Plaintiff "is provided general support and supervision from [the] staff," and that Plaintiff generally needs specific supervision "1-2 times per week." (AR 22; *see also* AR 246.) The ALJ further noted that Plaintiff "testified to being high functioning as compared to others in the sheltered workshop and that she does not really need anyone checking her work," and that "[t]his testimony is consistent

---
[5] Given Plaintiff's failure to challenge the ALJ's finding that Plaintiff's mother's testimony was less than credible, the Court deems any such challenge waived. *See Capitani v. Astrue*, No. 07CV0266 JAH (AJB), 2008 WL 11355422, *7 (S.D. Cal. May 16, 2008).

11

with the other evidence." (AR 23.)

Moreover, Plaintiff provides no support for her assertion that unskilled work and the need for once-a-day supervision are necessarily incompatible.[6] In fact, courts have routinely found that individuals who need supervision can work unskilled jobs. *See*, *e.g.*, *Alderson v. Colvin*, No. CV 12-10588-JPR, 2014 WL 657827, at *6-7 (C.D. Cal. Feb. 19, 2014) (finding that a claimant who needed close supervision to stay on task could work unskilled jobs); *Lawson v. Astrue*, No. CIV S-08-2008 GGH, 2010 WL 961722, at *17-18 (E.D. Cal. Mar. 16, 2010) (finding that a claimant who needed close supervision could work as an assembler, a theater usher, and an office helper); *Isaac v. Astrue*, No. CIV S-07-0442 GGH, 2008 WL 2875879, at * 4, n.6, 5 (E.D. Cal. Jul. 24, 2008) (finding substantial evidence to support ALJ's determination that the plaintiff, who had low average to borderline intelligence and needed close supervision, could work unskilled jobs).

The Court further finds Plaintiff's argument that the ALJ failed to adequately inquire into whether unskilled work conflicts with the need for once-a-day supervision to be unavailing. (*See* Doc. 13 at 10.) The ALJ specifically asked the VE to consider in the second hypothetical whether there is any work that can be performed by a person who "needs close supervision defined as having a supervisor checking the person's work once a day." (AR 52.) The VE clarified, asking, "One time per day only?," which the ALJ confirmed. (AR 51.) The VE then stated, "Yes . . . this hypothetical person can perform the three jobs that I proposed in hypothetical number one." (AR 52.) The VE testified that his testimony was consistent with the DOT. (AR 50.) The Court, therefore, finds that the ALJ did not err in finding that Plaintiff could perform the three identified unskilled jobs even with her limitation of needing once-a-day supervision.

//

---

[6] Although Plaintiff cites the Program Operations Manual System ("POMS"), which states that a claimant must show the ability to sustain an ordinary work routine without special supervision in order to perform unskilled work, Plaintiff fails to explain how this POMS policy applies to once-a-day supervision. (*See* Doc. 13 at 6.) Further, Plaintiff fails to offer any case law or agency rulings to support her proposition that the requirements of unskilled work conflict with the need for daily supervision.

12

**B. The ALJ Did Not Err in Assigning Limited Weight to the Testimony of Mary Starbritto.**

Plaintiff argues that the ALJ erred in assigning limited weight to the testimony given by Plaintiff's social worker, Mary Starbritto, and that the Court should reverse the ALJ's decision on that ground. (*See* Doc. 13 at 11, 14.) The Court disagrees with Plaintiff.

Social Security Ruling 06-03p designates licensed clinical social workers as "[m]edical sources who are not 'acceptable medical sources'." [7] Social Security Ruling ("SSR") 06-03p, at *3-4. SSR 06-03 further provides:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03, at *3; *see also* 20 C.F.R. § 416.927(c). When evaluating the opinions of "medical sources who are not 'acceptable medical sources'," the factors the ALJ should consider include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (5) any other factors that tend to support or refute the opinion. SSR 06-03p at *4-5. "To properly reject a social worker's opinion, the ALJ must provide 'reasons germane to each social worker for doing so.'" *Buckner v. Astrue*, No. CV 09-8814-PLA, 2010 WL 4056009, at *4 (C.D. Cal. Oct. 14, 2010) (quoting *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

---

[7] SSRs "are interpretive SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

13

At the hearing, Plaintiff's then-newly assigned social worker, Mary Starbritto, testified that she met Plaintiff for the first time a week prior to the hearing and that she had seen her twice. (AR 62.) Ms. Starbritto testified exclusively about Plaintiff's performance in the sheltered work program. (AR 62.) She observed Plaintiff "working at a really slow pace, but she was doing a really good job." (AR 62.) Plaintiff knew the job very well, and she knew what she was doing. (AR 63.) Ms. Starbritto opined that although participants find employment after their participation in the program, Plaintiff needed to remain in the program in order to develop the skills to find employment. (AR 64.) The ALJ afforded limited weight to Ms. Starbritto's testimony. The Court finds that the ALJ provided germane reasons for doing so. *See Buckner* 2010 WL 4056009, at *4.

As the ALJ explained, Ms. Starbritto met Plaintiff only a week prior to the hearing and had seen her only twice. Such short and limited interaction with Plaintiff weighs against giving significant weight to Ms. Starbritto's testimony. *See* SSR 06-03p at *4-5. Moreover, Ms. Starbritto's testimony was partially inconsistent with the objective medical evidence, a fact which also weighs against affording significant weight to Ms. Starbritto's testimony. In particular, Ms. Starbritto's assessment that Plaintiff was not ready to leave the program conflicted with the other evidence. Dr. Zhang opined that Plaintiff had only moderate limitations to her abilities to perform work activities consistently and without special or additional supervision. (AR 348.) Plaintiff also had no limitations in her ability to understand, remember, and carry out simple one- or two-step instructions. (AR 348.) Dr. Glidden found that Plaintiff's task-persistence and tolerance for frustration was within normal limits, and that she evidenced no inattention, distractibility impulsivity, or impersistence. (AR 323.) Dr. Glidden also found that Plaintiff presented normal thought process and content, intact error recognition and utilization, and she demonstrated "no evidence of perseverative interference or difficulty in shifting from one task to another." (AR 323.) Dr. Garcia assessed that Plaintiff was able to relate to supervisors and coworkers in a general workplace (AR 77), and Dr. Covey agreed with that assessment (AR 97). The ALJ therefore did not err in affording limited weight to Ms. Starbritto's testimony. *See* SSR 06-03p at *4-5; *see also Buckner* 2010 WL 4056009, at *4.

In sum, Ms. Starbritto's limited relationship with Plaintiff and her partially contradictory testimony were sufficient reasons for the ALJ to afford limited weight to Ms. Starbritto's testimony. *See*, *e.g.*, *Robinson v. Berryhill*, 690 Fed. Appx. 520, 524 (9th Cir. 2017) (finding that the ALJ correctly gave the opinion of plaintiff's social worker little weight because, among other things, the opinion contradicted the opinions of acceptable medical sources); *Kellum v. Astrue*, No. ED CV 08-228 PJW, 2009 WL 1941641, at *2-3 (C.D. Cal. June 30, 2009) (finding the ALJ did not err in rejecting social worker's opinion because social worker treated plaintiff for only one month before rendering her opinion and the opinion appeared to merely parrot plaintiff's complaints); *Thomas v. Astrue*, No. CV 07-8040-PLA, 2009 WL 151488, at *5 (C.D. Cal. Jan. 21, 2009) (finding ALJ's decision to afford limited weight to social worker's evaluation to be reasonable where ALJ considered the SSR 06-03p factors and the evaluation lacked objective support).

## VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **November 27, 2017**            /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE